675 A.2d 1273

**COMMONWEALTH of Pennsylvania**

v.

**Thomas STANDEN, Appellant.**

Superior Court of Pennsylvania.

Submitted March 12, 1996.

Filed May 3, 1996.

294

Michael J. Malloy, Assistant Public Defender, Media, for appellant.

Joseph J. Mittleman, Deputy District Attorney, Media, for Commonwealth, appellee.

Before BECK, KELLY and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

Appellant, Thomas Standen, appeals from the judgments of sentence entered in the Court of Common Pleas of Delaware County on September 22, 1994. We affirm.

On the night of October 19, 1993, Detective Michael Honicker of the Criminal Investigation Division of the Office of the Delaware County District Attorney was working on an undercover narcotics operation. Detective Honicker made arrangements to meet an individual named Joe Ward at the Country Squire Diner in Broomall, in order to purchase narcotics from

him. The officer met Ward inside the diner and they discussed the proposed transaction. After some negotiation, the pair agreed that Ward would leave the diner to obtain the marijuana that Detective Honicker had requested and that they would rendezvous in the parking lot. Ward left in his own car and proceeded to appellant's residence. Several minutes later, Ward returned to the diner in appellant's vehicle, a 1989 Ford Bronco, which was being driven by appellant. Appellant drove to the rear of the Detective's automobile where he stood waiting. Ward exited the vehicle and walked toward the Detective while appellant parked it approximately 15 feet from them. When the Detective asked why appellant was present, Ward replied that appellant was his marijuana supplier and was present to supervise the transaction and thereby protect his investment in it. Detective Honicker then gave Ward $400 for the marijuana. Ward got back into appellant's vehicle and they returned to appellant's house. On several occasions after that night, Ward confirmed to Detective Honicker that appellant was his marijuana supplier.

Detective Honicker prepared a criminal complaint and appellant was charged, in information # 5357–93, with possession of a controlled substance, possession of a controlled substance with intent to deliver, and criminal conspiracy as a result of the October 19, 1993 transaction. The Detective also prepared an affidavit of probable cause based upon which an arrest warrant was issued by District Justice David T. Videon. Thereafter, on January 14, 1994, Detective Honicker and two other detectives went to appellant's residence to execute the warrant. Upon arrival, the officers informed appellant that they were arresting him for his involvement in the October 19, 1993 incident and also that his truck was being confiscated pursuant to the Controlled Substances Forfeiture Act, 42 Pa.C.S.A. § 6801 *et seq.*, for its employment therein. Without provocation, appellant stated that there were additional controlled substances located in the vehicle. Police searched the vehicle and found the specified drugs exactly where appellant said they would be. As a result of the drugs found in the

vehicle, a second criminal complaint, docketed at # 148–94, was filed against appellant in which he was charged with possession of a controlled substance and possession with intent to deliver.

The cases against appellant were consolidated and appellant filed a suppression motion. This motion was denied. Appellant then waived his right to a jury trial and entered into an agreement with the Commonwealth to present a stipulated trial to the court. Consequently, the notes of testimony from two preliminary hearings and from the suppression hearing as well as Pennsylvania State Police laboratory reports were presented to the lower court in lieu of further testimony. At the same time, the Commonwealth withdrew, in both matters, the charge of possession of a controlled substance. After a review of the materials proffered, the lower court found appellant guilty of all the remaining charges. Appellant was immediately sentenced on September 22, 1994, under # 5357–93, to two concurrent terms of incarceration of six to twenty-three months. On information # 148–94, appellant was also sentenced to imprisonment for six to twenty-three months; this sentence was to run concurrently with that imposed on # 5357–93.

This appeal, presenting challenges to the lower court's denial of appellant's motion to suppress evidence, followed. Appellant bases these challenges upon the alleged illegality of his arrest and the related warrantless search of his automobile. We therefore address, preliminarily, the issue of exactly which evidence appellant sought to have suppressed at trial. Our review of the record reveals that appellant filed suppression motions on both transcripts and that these were consolidated to facilitate the suppression hearing. *See* trial court opinion, 10/5/95 at 1. As to information # 148–94, the lower court held that the controlled substances found in appellant's truck were not subject to suppression. *Id.* at 11. Further, following exhaustive discussion on information # 5357–93, the lower court concluded that it properly denied appellant's "Motion to Suppress his Arrest." *Id.* at 8.

Our analysis, however, indicates that the issue of suppression is entirely irrelevant to the charges contained in information # 5357–93. In so holding, we rely upon *Commonwealth v. Verdekal,* in which we held that

the United States Supreme Court has ruled that an illegal arrest, without more, has never been viewed as a bar to a subsequent prosecution nor as a defense to a valid conviction. *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). A person is not a suppressible fruit and any illegality of detention cannot deprive the government of the opportunity to prove guilt through the introduction of evidence wholly untainted by the police misconduct. [*Id.*] The Pennsylvania Supreme Court has also held that an appellant cannot seek the suppression of his very person. *Commonwealth v. Krall,* 452 Pa. 215, 304 A.2d 488 (1973).

351 Pa.Super. 412, 421, 506 A.2d 415, 419–420 (1986). Accordingly, we conclude that it is not necessary to consider whether appellant's arrest should be suppressed. Additionally, we note that the admissibility of the marijuana obtained on October 19, 1993, is unaffected by the legality of the police actions at the time of appellant's arrest since such was obtained prior thereto.

 In proceeding, therefore, we address appellant's claims only as they relate to the lower court's denial of suppression of the controlled substances involved in information # 148–94 which were obtained upon appellant's arrest and the accompanying search of his truck. Our standard of review in such matters is well-settled:

In reviewing an order denying a motion to suppress evidence[,] we must determine whether the factual findings of the lower court are supported by the evidence of record. In making this determination, we may only consider the evidence of the Commonwealth witnesses and so much of the witnesses for the defendant as, fairly read in the context of the record as a whole, remains uncontradicted. If the evidence supports the findings of the lower court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Frank,* 407 .Pa.Super. 500, 502, 595 A.2d 1258, 1259 (1991) (citations omitted).

■ First, appellant claims that the affidavit upon which the warrant for his arrest was issued contained insufficient information to establish probable cause for his arrest and, as a result, the controlled substances subsequently found in his vehicle should have been suppressed on that basis. We disagree.

While appellant's mere presence at the scene of the crime on October 19, 1993, may not have been sufficient to constitute probable cause to arrest, we find that when such is considered in light of the remaining facts and circumstances contained in the affidavit submitted to District Justice Videon, there existed ample allegations to support a finding that appellant participated in the criminal transaction. Notably, we find Joe Ward's movement between the diner and appellant's home during a critical stage of the drug sale to be significant in establishing appellant's involvement therein. Specifically, Ward met with appellant following the Detective's request for marijuana and prior to supplying such to him. In light of this fact, we also find Ward's statements to Detective Honicker regarding appellant on the night of October 19, 1993, to weigh heavily in finding that probable cause existed for the issuance of an arrest warrant. Accordingly, appellant's first argument must fail.

■ Appellant next claims that the search of his vehicle was illegal because no authority existed to search it without a warrant. Since we find that appellant consented to this search and that, therefore, no warrant was required, we must disagree.

We recently addressed the issue of consent and, in so doing, observed that

one of the specifically established exceptions to the requirement of a ... warrant ... is a search that is conducted pursuant to consent. It is well settled that if a person voluntarily consents to a search, evidence found as a result of that search is admissible against him. The consent,

however, must be given freely, specifically, unequivocally, and voluntarily. The question [of] whether [the] consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.

The fact that a defendant has been placed under arrest and that he has not been informed of his constitutional rights, although factors which must be considered, do not constitute per se a barrier to a finding that consent to search was voluntarily given.

*Commonwealth v. Washington,* 438 Pa.Super. 131, 136–37, 651 A.2d 1127, 1130 (1994) (citations and quotations omitted).

In the instant case, appellant, upon being arrested and informed that his car was to be confiscated, supplied the arresting officers with the keys to his Ford Bronco. Further, without provocation or request for information from the officers, appellant voluntarily informed them that there were controlled substances, marijuana and magic mushrooms, in the vehicle. *See* N.T., 2/25/94 at 29–32, 56–57. Clearly, the fact that appellant informed the officers of the contents of his automobile when considered in conjunction with the fact that he provided them with the keys is sufficient to establish his consent to the search in conformity with the above stated standard.

Based upon the foregoing we conclude that the lower court did not err in denying appellant's motion to suppress. Nevertheless, we pause to address the findings of the lower court that the search was proper on two other independent bases: (1) as a search incident to arrest and (2) as a search incident to the officers' seizure of appellant's vehicle under the Controlled Substances Forfeiture Act. We find that the lower court erred in its holding on both counts.

First, we address the trial court's finding that the contraband was properly admissible since it was obtained pursuant to a valid search conducted incident to arrest. Our Supreme Court recently stated that:

Merely arresting someone does not give police carte blanche to search any property belonging to the arrestee. Certainly, a police officer may search the arrestee's person and the area in which the person is detained in order to prevent the arrestee from obtaining weapons or destroying evidence, but otherwise, absent an exigency, the arrestee's privacy interests remain intact as against a warrantless search.

*Commonwealth v. White,* 543 Pa. 45, 57, 669 A.2d 896, 902 (1995) (emphasis in original) (footnotes omitted). In the case *sub judice,* the search of appellant's vehicle was not conducted pursuant to a search of the immediate area which appellant occupied while in custody. Clearly, then, a valid search incident to arrest was not conducted in this case.

■ Next, we address the lower court's determination that the search of appellant's vehicle was proper as incident to the officers' seizure of appellant's vehicle under the Controlled Substances Forfeiture Act. Following perusal of the Forfeiture Act itself and related case law, we hold that there does not exist an incidental right to conduct a search as held by the trial court.

The Forfeiture Act provides, in pertinent part, as follows:

**§ 6801. Loss of property rights to Commonwealth**

**(a) Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

\* \* \* \* \* \*

(4) All conveyances, including ... vehicles ..., which are used ... to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of [controlled substances, drug paraphernalia, and equipment.]

\* \* \* \* \* \*

**(b) Process and seizure.**—Property subject to forfeiture under this chapter may be seized by the law enforcement authority ... without process ... if:

(4) there is probable cause to believe that the property has been used or is intended to be used in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

\* \* \* \* \* \*

**(c) Seizure without process.**—In the event seizure without process occurs, as provided herein, proceedings for the issuance thereof shall be instituted forthwith.

42 Pa.C.S.A. § 6801.

A reading of this statute indicates that a person's property right in seized assets is not relinquished until forfeiture occurs. 42 Pa.C.S.A. § 6801(a). Consequently, at the time of seizure, the person whose property is taken retains an interest in that property. In subsequently determining whether forfeiture is appropriate, it is first necessary to comply with sections 6801(c) and 6802. These sections mandate the issuance of process and set forth the necessary procedures to be conducted in the Court of Common Pleas in the district where the property is located. *See Commonwealth v. Nineteen Hundred and Twenty Dollars United States Currency,* 149 Pa.Commw. 132, 612 A.2d 614 (1992); *Commonwealth v. One 1988 Suzuki Samurai,* 139 Pa.Commw. 68, 589 A.2d 770 (1991).

Since a party whose assets are seized but not yet forfeited has a property right in those assets and the entitlement to process before title may be divested, we find that that party also has a legitimate expectation of privacy in that asset. An investigative warrantless search of the asset during such period, as occurred in the present case, would, therefore, be violative of the constitution absent the independent applicability of an exception to the warrant requirement. *See United States v. Salmon,* 944 F.2d 1106 (3d Cir.1991); *White, supra.*

AFFIRMED.

BECK and KELLY, JJ., concur in the result.