**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Troy WALTER, Sr., Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2004.

Filed April 27, 2004.

Susan M. Schwartz, Sunbury, for appellant.

John P. Muncer, Asst. Dist. Atty., Sunbury, for Com., appellee.

Before: DEL SOLE, P.J., JOYCE and KLEIN, JJ.

DEL SOLE, P.J.

¶ 1 This is an appeal from a judgment of sentence of life imprisonment imposed after a jury found Appellant guilty of first degree murder in the shaking death of his infant son. We reverse and remand for a new trial.

¶ 2 Appellant presents four issues for our review. He alleges that the evidence does not support a first degree murder conviction because malice was not established. He also questions whether the trial court improperly permitted the introduction of evidence of a prior injury to the child's leg. In a related issue he claims the trial court should have granted his request for a mistrial when the prosecutor referred to this injury and asked the jury to infer it was caused by Appellant. Because we conclude the court did err in admitting the evidence of an unrelated leg injury and that this error was compounded

by the prosecutor's comments, we need not reach Appellant's fourth claim regarding the admission of a videotape which depicts a computer generated simulation of the effects of shaking on an infant's brain.[1]

▮ ¶ 3 We begin with a review of the sufficiency of the evidence.[2] In reviewing a sufficiency of the evidence claim, we view the evidence, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth. *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975). A mere conflict in the testimony does not render the evidence insufficient, *Commonwealth v. Verdekal*, 351 Pa.Super. 412, 506 A.2d 415 (1986), because it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence. *Commonwealth v. Whitfield*, 475 Pa. 297, 380 A.2d 362 (1977). Furthermore, all evidence actually received must be considered, even if the trial court's rulings thereon were incorrect. *Commonwealth v. Minnis*, 312 Pa.Super. 53, 458 A.2d 231 (1983).

¶ 4 The Commonwealth in this case offered evidence to show that an eight-month-old baby was taken to the hospital by his parents who complained of his inability to breathe. It was determined that he had bleeding and swelling of the brain and retinal hemorrhages. This diagnosis caused the experts to determine that the baby had been shaken to such a degree as to cause these injuries. The Commonwealth also introduced statements given by Appellant. He stated he was carrying the child up the steps and tripped. The baby fell and Appellant grabbed him by the leg

and returned him to his crib. Appellant admitted to striking the baby twice with the soft portion of his closed fist while the baby was in his crib, causing him to hit his head off the railing of the crib. He then brought the baby back downstairs. The baby was in Appellant's lap, and began to vomit. Appellant asked an older child to get a rag, and then Appellant shook the baby "hard" N.T., at 3/18–25/02 at 597 and he became "like a rag doll." *Id.* at 598. Appellant then returned the baby back upstairs and shook him again for the second time. The medical experts testified that the baby's death was consistent with shaken baby/impact syndrome.

▮ ¶ 5 Based upon the testimony offered we conclude the evidence offered by the Commonwealth was sufficient to support first degree murder. Appellant not only shook his infant son violently, he struck the baby with his fist, twice. These facts support the trial court's conclusion that "Defendant was the person who caused the injuries to the victim and that he had formed the specific intent to kill Dakota in this case." Trial Court Opinion, 5/21/03, at 6.

▮ ¶ 6 An "intentional killing" for the purposes of first-degree murder is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). The element of specific intent to kill may be proven by the circumstances surrounding the event, such as the seriousness and type of the injuries. *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973). In this instance the jury accepted that Appellant's

1. Nevertheless, we note that consideration of this claim could not be undertaken because Appellant failed to include the videotape in the record for our review.

2. Although we are awarding a new trial, it is nevertheless necessary to review Appellant's

sufficiency argument because if the evidence is insufficient to sustain the conviction of first degree murder, Appellant would be afforded greater relief in the form of a discharge of this conviction. *Commonwealth v. Merrick*, 338 Pa.Super. 495, 488 A.2d 1, 4 (1985).

attack on an eight-month-old baby, striking him twice in the head with a fist and shaking him violently was sufficient to establish an intent to kill. The evidence of record supports the factual basis for this ruling and the legal conclusion that Appellant had the specific intent required to convict him of first degree murder. *See Commonwealth v. Dunn*, 424 Pa.Super. 521, 623 A.2d 347 (1993) (where the appellant was convicted of first degree murder after he beat the 16–month–old victim and dragged him down the steps allowing his head to bounce from one step to the other).

¶ 7 Although we find sufficient evidence to support the jury's verdict in this matter, we nevertheless conclude that a new trial must be awarded because the jury was improperly exposed to irrelevant and highly prejudicial information. At trial the Commonwealth sought to offer evidence that this baby had previously suffered a broken bone in his leg which could only have been caused by a twisting injury. The Commonwealth argued it was evidence of a prior assault on the child and was admissible "to show the defendant's attitude towards this child." N.T., 3/7/02, at 66 and 68.[3] Defense counsel argued that there was nothing to connect Appellant to this injury other than speculation. The trial court ruled that it would grant the defense motion and not allow evidence of any prior bad act as it related to the victim's broken leg. The court stated:

> I mean certainly, if the medical personnel testify that there was a broken leg, perhaps they can. But not in relation to the defendant because I don't think

there's anything sufficient to show that he was in fact connected with that.
*Id.* at 70.

¶ 8 At trial the Commonwealth witness was questioned about prior injuries:

Q. And as far as any prior injuries, did you observe anything of that in the reports that you reviewed of the child?
A. I did see a report that showed that he had had an old fracture of his right leg.
Q. And what type of fracture is that?
A. It's called a bucket handle fracture. Characteristic of—of a child's limb that's been twisted.

N.T., 3/18/02, at 193.

¶ 9 Defense counsel objected to this questioning and the court responded: "I don't think he said anything that was outside of the scope of what we had already ruled upon. So I will overrule your objection unless he goes beyond that." *Id.* at 194. No further questions were posed regarding the broken leg injury. However during closing arguments the prosecutor made direct reference to it. He stated:

> You know, isn't it interesting—and I don't want to digress too much—but isn't it interesting that this child has three leg fractures that turned up in a treatment in April from an X-ray at Geisinger that is consistent with a twisting or swinging motion of a child's leg.
>
> Now, this is an eight-month-old child that cannot walk. Isn't it interesting that he has fractures that are consistent with carrying the child the way the Defendant says he carried the child. Now, there's no evidence that he did that. I'm not telling he did that. It's just one of those facts I find interesting.

**3.** The Commonwealth advised the court that the old injury to the child's leg was initially diagnosed as a result of osteomyelitis, which is a bone infection, but further X-rays after the child's death indicated that he suffered a broken leg which occurred some three months before his death.

N.T., 3/25/02, at 1018. In response to defense counsel's objection and request for a mistrial, the prosecutor responded: "I specifically said when I said that in my closing I said there's no evidence he caused this and I'm not telling you he caused it." *Id.* at 1058. On this basis the court overruled the objection. *Id.* at 1059.

¶ 10 Appellant in this appeal argues that evidence of a prior injury to the child was irrelevant because he could not be connected to the injury, and it was prejudicial as it suggested a prior bad act was committed against the child by Appellant. We agree. The trial court specifically recognized that there was no evidence that Appellant was in any way responsible for the prior injury to the child's leg. The trial court directly advised the parties that it would not permit evidence that linked Appellant to the prior injury. The response offered by the Commonwealth witness revealed that the child had an old injury to his leg. The witness then continued to describe the injury as being caused from a twisting of the limb. This information which suggested a purposeful injury was unresponsive to the question and offered irrelevant information. "Before any evidence is admissible in a criminal proceeding, it must be competent and relevant." *Commonwealth v. Owens,* 437 Pa.Super. 64, 649 A.2d 129, 135 (1994). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Stansbury,* 433 Pa.Super. 493, 640 A.2d 1368, 1371 (1994) (quoting *Commonwealth v. Spiewak,* 533 Pa. 1, 8, 617 A.2d 696, 699 (1992)). The absence of any connection between Appellant and the leg injury made this evidence irrelevant.

¶ 11 While it is clear that information regarding a prior injury to the child's leg was irrelevant and potentially prejudicial, prejudice was clearly established when the prosecutor directly referred to this testimony and linked Appellant to the prior injury. His argument to the jury clearly suggested that Appellant was responsible for the prior injury and he engaged in a prior bad act with regard to this child.

¶ 12 Evidence of prior bad acts is inadmissible to show that a defendant acted in conformity with those past acts or to show a criminal propensity. *Commonwealth v. Fisher,* 564 Pa. 505, 769 A.2d 1116, 1128 (2001). We have recognized that evidence of prior bad acts or crimes may be admitted to show motive, intent, absence of mistake or accident, common scheme, plan, or design, or identity of the perpetrator of a crime. *Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1152 (2000). In addition, evidence of other crimes may be introduced where such evidence was part of the chain or sequence of events which became part of the history of the case in question and formed part of the natural development of the facts. *Id.* The admission of this evidence is proper only if its probative value outweighs its potential for prejudice. Pa.R.E. 404(b)(3). *Commonwealth v. McCloskey,* 835 A.2d 801, 810 (Pa.Super.2003). With respect to a prosecutor's remarks regarding the evidence, these comments will not constitute reversible error unless their unavoidable effect is to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they can not weigh the evidence objectively and render a true verdict. *Commonwealth v. Washington,* 549 Pa. 12, 700 A.2d 400, 407–08 (1997).

¶ 13 In this instance the trial court ruled that no exceptions for the admission of prior bad act evidence applied, and such

evidence would have no proper purpose in this case. Nevertheless the evidence was admitted and the comments of the prosecutor reinforced its admission and specifically linked Appellant to the prior injury, thus implying his malice toward the child. The Commonwealth argues in its Brief that this evidence and evidence of Appellant's actions in carrying the child by the leg when Appellant fell with him on the stairs "demonstrated the defendant's malice towards the child especially when coupled with the two blows to the head and the violent shaking of the child victim." Appellee's Brief at 6. However, as the trial court recognized, it would be particularly improper for the jury to make this inference, as Appellant could not be linked to the prior injury.

¶ 14 In assessing the impact of an error we often consider whether the case was tried by a judge which can eliminate the potential for prejudice. *Commonwealth v. O'Brien*, 836 A.2d 966, 972 (Pa.Super.2003). In a jury trial where the jury is instructed to disregard the information which was improperly brought to its attention the impact of an error may be minimized so as to render it harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155, 165 n. 18 (1978). Further an error which, viewed by itself, is not minimal, may nonetheless be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence. *Id.* at 165. None of these situations applies here.

¶ 15 This case was tried before a jury without any cautionary instructions with respect to this evidence. The evidence coupled with the prosecutor's comments was clearly prejudicial in that it suggested Appellant engaged in prior abusive behav-

ior toward the child. In a first degree murder case where intent must be established through circumstantial evidence of the defendant's conduct, the attempt to imply Appellant engaged in other acts of abuse toward this child causing him previous injury was improper.[4] We conclude that the jury in this case was prejudiced by the admission of this evidence and the comments regarding it made by the prosecutor. Accordingly, Appellant must be afforded a new trial.

¶ 16 Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

---

4. The jury itself may have been troubled in its resolution of the matter, in that they sought further instructions from the court on the specific element of intent. N.T., 3/22/02, at 1075.